IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANTIAGO SOTO,

    Plaintiff,                    No. CIV S-04-571 FCD GGH P

    vs.

WARDEN D.L. RUNNELS,         ORDER &

    Defendant.              FINDINGS AND RECOMMENDATIONS

_____/

Introduction

       Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are plaintiff's motions for a preliminary injunction, filed on March 17, 2005, and for a temporary restraining order, filed on April 28, 2005. Defendant's opposition to both was filed on June 6, 1005, an extension of time having been granted.[1]

Complaint

       Plaintiff, who sues only for prospective injunctive relief, alleges that the implementation of "Op. 1" on April 29, 2002, by the defendant warden[2] resulted in two

---

[1] Defendants' recently submitted motion for summary judgment, filed on October 17, 2005, will not be adjudicated herein.

[2] Although plaintiff initially named T. Felker as the defendant, ascribing the prison policies at issue to him, as he sues only for prospective injunctive relief, the court substituted in

unconstitutional policies in violation of the Eighth and First Amendments: one, compelling High Desert State Prison (HDSP) inmates, including plaintiff, to choose between outdoor exercise and law library access; the other, limiting prisoners' weekly outdoor exercise to from zero to three hours per week.  Form Complaint, p. 8;Attachment, pp. 3-6.

TRO

The purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction.  It is apparent, however, that requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

Preliminary Injunction Standard

The legal principles applicable to a request for injunctive relief are well established.  To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under

---

the name of the current Warden of High Desert State Prison.  See Order filed on July 14, 2004, fn. 1.

any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Id.  In the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits. Id.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Motion for TRO and Preliminary Injunction

In his motion for a preliminary injunction, plaintiff seeks an order which would require defendant to allow plaintiff and all other prisoners at HDSP, Level IV, to have no less than 10 hours a week of outdoor exercise. PI motion, pp. 1-2. Plaintiff alleges that he and other general population HDSP prisoners are "provided on a regular program basis no more than 3 hrs a week of outdoor exercise." Id., p. 3. Plaintiff states that he and other HDSP inmates have been denied access to outdoor exercise and law library since January 20, 2005. Id. The court notes that this representation is in apparent conflict with plaintiff's claim in the underlying complaint that inmates have been denied such access since April 29, 2002.

Plaintiff claims that he and other Level IV 180 degree custody inmates are being deprived of a basic human physical and mental need with the deprivation of adequate physical exercise. PI motion, pp. 3-6. Plaintiff alleges that the "great majority" of HDSP inmates have no access to educational or vocational programs, jobs, rehabilitation, in-cell handicraft hobbies or weight-lifting equipment. Id., pp. 3-4. Plaintiff claims that undue restrictions on prisoners' opportunities for physical exercise constitute cruel and unusual punishment. Id., p. 4. Plaintiff includes a declaration signed by himself and, appends to it a separate sheet, the apparent signatures of 32 other inmates in support of his motion, wherein plaintiff also claims that D-yard 180 degree design inmates have no more than three hours a week of outdoor exercise and usually none at all; that access to the law library for inmates with no court deadlines is denied during

lockdowns; that inmates are ducated for the law library on their few outdoor exercise days, forcing them to choose one or the other; and that locking up inmates 24 hours a day, seven days a week will increase illness, stress and tension among most inmates. See 3/13/05 declaration.

In his motion for a temporary restraining order (TRO), plaintiff alleges that on April 20, 2005, under the authority of defendant Runnels a known enemy of plaintiff's was moved from C-yard, to D-yard, where plaintiff is housed, in what to plaintiff appears to be retaliation for his having brought the instant civil rights complaint. TRO motion, pp. 1-2. Plaintiff attaches a Rules Violation Report (RVR), dated May 30, 2004, wherein plaintiff was assessed a 90-day credit loss for a Division D offense, which also states that he and inmate Verdugo "are to be considered enemies." Plaintiff claims that defendant Runnels is aware of the May 30, 2004 RVR and has placed his known enemy not only in the same yard, but in the same building. TRO motion, p. 2. Plaintiff asks the court to order defendant to stop any future retaliation against him. Id.

Opposition

Defendant contends that both of the issues raised by plaintiff in seeking immediate injunctive relief have been mooted. Opp., pp. 4-5. As to plaintiff's yard privilege concerns, defendant asserts, HDSP was put on lockdown status in January 2005 as a result of information received of possible staff assaults being planned as well as various incidents that occurred on Facilities B, C, and D which showed a pattern of assaulting and/or threatening staff. Opp., p. 2; Decl. of Dennis Gunter, HDSP Litigation Coordinator, ¶ 5. HDSP was locked down in order to complete an investigation, searches and administrative review, but the entire institution is no longer locked down. Id. Yard privileges were suspended as a security precaution during lockdown. Id., Gunter Decl., ¶ 6.

According to defendant, any inmate who was a preferred legal user (PLU) was allowed law library access. A PLU is an inmate with a court deadline that is pending. Inmates are granted PLU status by demonstrating that they have a pending court deadline and asking to

4

be ducated to the law library. Inmates who have been ducated are on a list to be escorted to the law library given by each facility's librarian technical assistant to the program lieutenant daily. Opp., pp. 2-3, Gunter Decl., ¶ 7.

In early May 2005, HDSP began a process of incremental un-lock, meaning that that all yards come up incrementally. According to defendant's declarant, the un-lock process must occur in increments to preserve the safety and security of the institution. While HDSP is no longer on institutional lockdown status, some yards are still on lockdown due to other incidents. Opp., p. 3, Gunter Decl., ¶ 8.

Declarant Gunter asserts that Facility D, building 2, section A, where plaintiff is housed, has been unlocked since May 8, 2005. Therefore, according to defendant, plaintiff has regained his yard privileges. Opp., p. 3, Gunter Decl., ¶ 9.

As to plaintiff's enemy concerns, once plaintiff advised the litigation office that he had been placed on the same yard as inmate Verdugo, a known enemy of plaintiff's, Litigation Coordinator Gunter avers that he took immediate action, confirming that plaintiff and Verdugo were known enemies and contacting the Facility D Sergeant. Gunter asked the Facility D sergeant to move Verdugo out of the building and off the yard immediately. Inmate Verdugo was transferred out of the facility and into another facility on May 2, 2005. Opp., pp. 3-4, Gunter Decl., ¶¶ 10-11, 14.

Declarant Gunter also maintains that at no time was plaintiff in any danger from Verdugo because, although he had been placed in the same facility and building on April 7, 2005, a concrete wall separated plaintiff's section from Verdugo's and, as D-facility was on lockdown, the two could not have met on the yard. Opp, p. 4, Gunter Decl., ¶¶ 12-13. Moreover, staff error precipitated the temporary placement of Verdugo in plaintiff's building, not any intent to harm plaintiff. Opp, p. 4, Gunter Decl., ¶ 15.

According to defendant, since plaintiff's yard privileges have been re-instated and his enemy concerns alleviated, his motions are moot.

Plaintiff's Reply

As to his motion for a TRO, plaintiff concedes that what he apparently now finds to have been a "staff error" in placing his known enemy, inmate Verdugo, in his housing unit was corrected within 15 or 20 days of plaintiff's filing of his motion by placement of the inmate back into the yard from which he had been transferred. Support for PI motion, filed on 7/13/05, pp. 1-2. Plaintiff withdraws his TRO request since the issue has been resolved. Id., p. 8. The court finds the April 28, 2005 request to have been rendered moot and will allow plaintiff to withdraw the TRO motion.

However, as to defendant's representation that plaintiff has not been on lockdown since May 8, 2005, plaintiff maintains that while Mexicans and native Americans were unlocked then, and whites were unlocked thereafter, on June, 2005, inmates classified as "Southerners, Northerners, and African Americans" were still on lockdown as of June 23, 2005. Plaintiff's Decl., filed on 7/13/05, p. 2. Those groups still on lockdown, of which plaintiff presumably is one, although that is not entirely clear, are denied movement outside their cells and access to outdoor exercise; law library access unless they have a pending court deadline; access to the prison commissary for "essential items" such as shampoo, toothpaste, toothbrushes, pen fillers, writing paper, cleaning supplies, vitamins; are subject to frequent restriction to their cells for 24 hours a day, seven days a week; that inmates with "health issues" in their 40's and 50's experience lockdowns from 10 to 100 days that contribute to the deterioration of their health. Plaintiff's Decl., filed on 7/13/05, pp. 2-3. Plaintiff appends some 65 inmate signatures to his declaration. Plaintiff ranges far afield from his initial motion wherein he explicitly sought only an order for himself (and other HDSP inmates) to be allowed 10 hours a week of physical exercise.

Plaintiff also sets forth in his own handwriting, with no supporting source documentation, a "timetable" for outdoor exercise for those who have been unlocked, stating that they get only zero to one and a half hours of exercise on a weekly basis. In the filing that

6

1 accompanies his 7/13/05 declaration, he states, for example, that the inmates off of lockdown
2 since May 2005, received no yard on 5/30/05, 6/1/05, 6/03/05, 6/4/05, 6/5/05, 6/15/05, and
3 6/20/05 and less than two hours on 6/7/05, 6/10/05, 6/14/05, 6/20/05, 6/2/05, 6/23/05, 6/24/05.
4 Support for PI motion, filed on 7/13/05, pp. 2-3. As noted, plaintiff does not submit the actual
5 timetable, nor does he state the source of his version of a timetable, nor does he even state
6 whether it explicitly applies to him.

Plaintiff cites to CAL. CODE REGS. tit.xv, §§ 3330(c)[3] and 3331(h),[4] which he avers
defendant routinely "bypasse[s]," maintaining that the lack of outdoor exercise is an ongoing
policy at HDSP. Id., pp. 3-4. Plaintiff claims also that allowing only those inmates with pending
court deadlines to access the law library, inter alia, precludes inmates from filing legitimate
complaints and applications for writs of habeas corpus. Id., p. 7.

Discussion

Plaintiff mischaracterizes his complaint as a "class action," although plaintiff
never filed any motion pursuant to Fed. R. Civ. P. 23. Support for PI motion, filed on 7/13/05, p.
4. Moreover, he is a non-lawyer proceeding without counsel. It is well established that a
layperson cannot ordinarily represent the interests of a class. See McShane v. United States, 366
F.2d 286 (9th Cir. 1966). This rule becomes almost absolute when, as here, the putative class
representative is incarcerated and proceeding pro se. Oxendine v. Williams, 509 F.2d 1405,
1407 (4th Cir. 1975). In direct terms, plaintiff cannot "fairly and adequately protect the interests
of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. See Martin v.

---

[3] "Disciplinary detention may be ordered as a continuous period of confinement or as intermittent confinement on holidays, weekends or days off from assigned work and program activities. When ordered as intermittent confinement, confinement shall not exceed 10 days during a 35-day period. The chief disciplinary officer shall review the treatment of an inmate confined in disciplinary detention and consider a modification of sentence when evidence indicates the inmate is ready to conform to the rules."

[4] "Exercise. Inmates undergoing disciplinary detention will be permitted a minimum of one hour per day, five days per week, of exercise outside their cells unless security and safety considerations preclude such activity."

1  Middendorf, 420 F. Supp. 779 (D.D.C. 1976).  Plaintiff's privilege to appear in propria persona
2  is a "privilege ... personal to him.  He has no authority to appear as an attorney for others than
3  himself." McShane v. U. S., 366 F.2d 286, 288 (9th Cir.1966), citing Russell v.United States,
4  308 F.2d 78, 79 (9th Cir. 1962); Collins v. O'Brien, 93 U.S.App.D.C. 152, 208 F.2d 44, 45
5  (1953), cert. denied, 347 U.S. 944, 74 S. Ct. 640 (1954).  Therefore, plaintiff brings this action
6  only on his own behalf and plaintiff continues in this action only as an individual.  Plaintiff,
7  because of his effort to speak on behalf of other inmates, does not make clear whether he,
8  himself, is being deprived of all outdoor exercise or is receiving only limited exercise.  Support
9  for PI motion, filed on 7/13/05, pp. 2-3.  On the other hand, to the extent plaintiff seeks to
10 implicate defendant for an unconstitutional policy, he fails to make the requisite showing that he
11 is subject to irreparable injury justifying preliminary injunctive relief such that the court should
12 order in the interim that inmates be allowed 10 hours of physical exercise a week, without any
13 consideration given to institutional safety or security concerns, which concerns plaintiff
14 dismisses as basically pretextual.

15          An Eighth Amendment claim that a prison official has deprived an inmate of
16 humane conditions of confinement must meet two requirements, one objective and one
17 subjective.  Allen v. Sakai, 40 F.3d 1001 (9th Cir. 1994), as amended on denial of rehearing, 48
18 F.3d 1082, 1083 (9th Cir. 1994), citing Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1977
19 (1994).  "Under the objective requirement, the prison official's acts or omissions must deprive an
20 inmate of "" the minimal civilized measure's of life's necessities.""" Id., quoting Rhodes v.
21 Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399-2400 (1981).  "The subjective requirement,
22 relating to the defendant's state of mind, requires deliberate indifference." Id., citing Farmer, 511
23 U.S. at 836, 114 S. Ct. at 1979.

24          The deprivation of outdoor exercise can constitute cruel and unusual punishment.
25 Spain v Procunier, 600 F.2d 189 (9th Cir. 1979).  "[S]ome form of regular outdoor exercise is
26 extremely important to the psychological and physical well being of the inmates." Id., at 199.

1 | The long term deprivation of exercise is a denial of a basic need in violation of the Eighth
2 | Amendment.  Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994).

The long term deprivation of exercise is a denial of a basic need in violation of the Eighth Amendment.  Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994).

In Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979), the Ninth Circuit found that regular outdoor exercise is necessary "unless inclement weather, unusual circumstances, or disciplinary needs made that impossible."  600 F.2d at 199.

Plaintiff makes an insufficient showing that he is currently subject to irreparable harm and is deprived on an on-going basis of outdoor physical exercise in his motion.  He does not even make clear whether he is personally denied all access to outdoor physical exercise or is subjected to limitations on outdoor exercise.  The signatures of a number of inmates, none of whose names even appear on the same pages as the claims plaintiff sets forth, does not even adequately demonstrate that the inmates support his contentions.  Plaintiff's representation of a "timetable," without providing its source or the actual documentation on which it appears is also inadequate.

On the other hand, defendants do not clarify precisely what type and duration of exercise to which plaintiff is now entitled—simply that he has regained "yard privileges." Defendants appear to assume that they may place inmates on lockdown status for months at a time, with no exercise opportunities available, and that such a decision is therefore automatically immune from Eighth Amendment review.  While emergency situations may require that inmates receive no "yard" during the course of the emergency, defendants cannot make lockdown status the rule and the not the emergent exception.

Further discovery is warranted before the court makes a decision on what is a sparse, ambiguous record.  The court is unwilling to recommend an injunction on the general, unclear allegations of plaintiff, which would have an enormous effect on the running of a probably overcrowded prison.  However, defendants should understand that the problems associated in running a prison do not give them carte blanche immunity from Eighth Amendment review to do whatever they wish, whenever they wish.

As to plaintiff's generic claims that he and others are deprived of adequate law library access when, during lockdown, they are only granted access if they can show a pending court deadline, again plaintiff makes no showing in his motion that he is currently impeded in pursuing a viable claim.  In support of his allegation that he is being denied access to the courts, plaintiff must show that he has sustained an actual injury; i.e., he must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Lewis v. Casey, 518 U.S. 343, 353, 362, 116 S. Ct. 2174, 2180-81 (1996).   The Supreme Court in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491 (1977) did not create an "abstract, freestanding right to a law library or legal assistance." Lewis v. Casey, 518 U.S. at 350-51, 116 S. Ct. 2174.

Speculative injury does not constitute irreparable harm.  See Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988); Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984).  A presently existing actual threat must be shown, although the injury need not be certain to occur.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130-31, 89 S. Ct. 1562 (1969); FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997), cert. denied, 523 U.S. 1020 (1998); Caribbean Marine Servs. Co., 844 F.2d at 674.

Because of plaintiff's failure to sufficiently demonstrate that he is subject to irreparable harm absent this court issuing a preliminary injunction, this court will recommend denial of his motion.

Accordingly, IT IS ORDERED that plaintiff's July 13, 2005 withdrawal of his motion for a temporary restraining order, filed on April 28, 2005, moots the TRO motion, which is hereby dismissed.

IT IS HEREBY RECOMMENDED that plaintiff's motion for preliminary injunction, filed on March 17, 2005, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3  shall be served and filed within ten days after service of the objections.  The parties are advised
4  that failure to file objections within the specified time may waive the right to appeal the District
5  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: 1/4/06              /s/ Gregory G. Hollows

7                              _____
                                GREGORY G. HOLLOWS
                                UNITED STATES MAGISTRATE JUDGE
8
   GGH:009
9  soto0571.pi